IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
JAN  5 2017
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | **UNDER SEAL** |
| ) | |
| v.             ) | Case No. 1:17-MJ-6 |
| ) | |
| OTIS CHEVALIER,       ) | |
|        Defendant.     ) | |
| ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeremy Copeland, United States Postal Inspector, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit is submitted in support of a criminal complaint and arrest warrant for OTIS CHEVALIER (hereinafter CHEVALIER), charging him with knowingly, intentionally, and unlawfully combining and conspiring with others, known and unknown, to distribute 1 kilogram or more of a mixture and substance containing detectable amounts of phencyclidine ("PCP"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2.     This affidavit is for the limited purpose of obtaining a criminal complaint. It is not intended to include each and every fact and matter observed by me or known to the government. The facts and information contained in this affidavit are based on my personal knowledge as well as that of the other agents involved in this investigation. All observations that were not made personally by me were related to me by the persons who made the observations. This affidavit contains only those facts necessary to establish that probable cause exists that violations of Title 21, United States Code, Sections 841(a)(1) and 846 occurred within the

1

documented activities of CHEVALIER.

3. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 115(c)(1) that is, authorized by law or by Government agency to engage in or supervise the prevention, detection, investigation or prosecution of any violation of Federal criminal law.

4. I have been a U.S. Postal Inspector since July 2013. I have completed 12 weeks of basic investigative training, which included various aspects of federal law enforcement training related to the investigation of narcotics-related offenses. Before becoming a Postal Inspector, I was a Federal Air Marshal for eight years. Before becoming an Air Marshal, I was a patrol officer for three years with the Opelika Police Department in Alabama. Prior to that, I was a member of the U.S. Coast Guard's Tactical Law Enforcement Team South for seven years. I have participated in investigations concerning possession with the intent to distribute and the distribution of controlled substances. I have participated in drug interdictions, controlled deliveries, seizures, and search warrants that have resulted in criminal arrests and prosecutions.

5. As part of my duties as a United States Postal Inspector, I investigate the use of the U.S. Mails and private carriers to illegally transport controlled substances and drug trafficking instrumentalities, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846. I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses. Through my education and experience, and that of other agents, I have become familiar with the methods that individuals use to traffic narcotics through the U.S. Mails as well as private carriers.

6. I am familiar with narcotics investigations targeting the producers/traffickers/distributors of phencyclidine. I am aware of the aspects of this class of

2

drug that make it desirable to the addict as well as to the distributor. I am aware of the many methods of shipping and distribution commonplace with traffickers of this drug as well as the payment methods for this controlled substance.

7.      Unless otherwise noted, wherever in this affidavit I assert that a statement was made by an individual, that statement is described in substance and in part and is not intended to be a verbatim recitation of such statement.

## PROBABLE CAUSE

| USPS Reference Parcels with Tracking Numbers | | |
|---|---|---|
| *Parcel* | *Tracking Number* | *Addressed To* |
| P1 | 9534611145105345389133 | 44118 Turf Field Square, Chantilly, VA 20152 |
| P2 | 9534614208725345273288 | 2987 District Avenue Apartment 214, Fairfax, VA 22031 |

Reference Table for Parcels

8.      On December 18, 2015, U.S. Postal Inspectors seized United States Postal Service (USPS) Parcel 9534611145105345389133 (hereinafter "Parcel 1"), destined for 44118 Turf Field Square, Chantilly, VA 20152, located within the Eastern District of Virginia. Based upon the parcel's appearance, along with other suspicious characteristics, Postal Inspectors submitted Parcel 1 to a canine inspection, which alerted positive to presence of narcotics.

9.      U.S. Postal databases revealed two additional parcels were linked by an internet protocol address (IP) to a parcel (Parcel 2) addressed to 2987 District Avenue, Apartment 214, Fairfax, VA 22031, located within the Eastern District of Virginia, which is the Virginia DMV registered address of CHEVALIER. The IP address that checked tracking for both parcels, located at 43585 Taylor Tree Terrace, Chantilly, Virginia 20152, within the Eastern District of Virginia, is a registered address of a family member of CHEVALIER.

3

10.     On December 21, 2015, Inspectors obtained and executed a search warrant on Parcel 1. The contents of Parcel 1 contained approximately two gallons of the illegal controlled substance, PCP. The substance field-tested presumptive positive for PCP and Drug Enforcement Administration Chemical Analysis Reports confirmed that substances contained in Parcel 1 were PCP.

11.     On December 22, 2015, U.S. Postal Inspectors and Loudoun County detectives conducted a controlled delivery of Parcel 1 and executed a search warrant on the delivery address, 44118 Turf Field Square, Chantilly, VA 20152. An unindicted co-conspirator ("UCC"), accepted the parcel. Upon questioning, UCC stated that Parcel 1 was for CHEVALIER.

12.     Investigation revealed images of an individual who clearly appears to be CHEVALIER shipping Parcel 2 from a post office in the Los Angeles area of California. The parcel was almost identical in size and appearance to that of Parcel 1, the interdicted package containing PCP.

13.     During the search of the residence, UCC stated CHEVALIER was expected to retrieve the parcel sometime during the day. Agents discovered UCC had text messaged CHEVALIER the following after placing the parcel inside of the house: "Hey. Your package just arrived. It's giving off a slight odor. Just FYI." PCP is known to have a very pungent and recognizable odor. In a subsequent text message, CHEVALIER asked UCC if there was any moisture. That question indicates his knowledge that the parcel contained a liquid. UCC asked CHEVALIER when he would arrive to retrieve the package and CHEVALIER indicated he was "making stops." In my experience, narcotics distributors who use "drop houses" (houses where narcotics are shipped, but not meant to be housed), use multiple addresses to avert suspicion. It is

4

my belief that the "stops" CHEVALIER referred to were stops needed to retrieve and/or relocate parcels containing PCP from the various addresses where they were shipped.

14.    On February 18, 2016, U.S. Postal Inspectors along with Loudoun and Fairfax County detectives executed a search warrant on CHEVALIER's apartment, located at 2987 District Avenue Apartment 214, Fairfax, VA 22031 (the same address where Parcel 2 was delivered). CHEVALIER was listed as the sole lessee per the apartment management company's internal records. Within CHEVALIER's apartment, officers found suspected marijuana, large liquid droppers (consistent with materials used for the preparation and packaging of PCP – which later field tested positive for PCP residue), multiple cans of starter fluid (commonly used in the preparation of PCP), cellphones, and approximately $27,704 in cash (notable in that CHEVALIER has no reported source of income).

15.    On March 8, 2016, the Inspection Service Forensics Lab confirmed CHEVLAIER's fingerprints were present on the plastic tub from Parcel 1. The plastic tub held the jars of PCP, which were shipped to UCC's home. The tub was within the cardboard shipping box and is the parcel UCC stated was for CHEVALIER.

16.    Surveillance revealed that CHEVALIER frequented a storage unit at CubeSmart Storage, located at 8410 Westphalia Rd, Upper Marlboro, MD 20774, unit #4016. CHEVALIER's pattern of travel and activity indicated he used this storage unit to likely house and process PCP.

17.    On October 27, 2016, surveillance video captured CHEVALIER removing a large liquid filled jar from within the storage unit. Camera footage shows CHEVALIER placed the jar on the ground near the trunk of his vehicle.

18.    On November 8, 2016, surveillance video captured CHEVALIER removing two large "Mason" style jars from the storage unit, consistent with previously identified Mason jars containing PCP, and place them into the trunk of his vehicle.

19.    On November 23, 2016, surveillance video captured CHEVALIER place unknown items into the storage unit. CHEVALIER almost closed the door entirely in an apparent attempt to conceal his activity. CHEVALIER remained inside for approximately 15 minutes before exiting the storage unit and placing a plastic bag containing what appears to be jars inside the trunk of his vehicle. This behavior is consistent with the investigators' suspicion that CHEVALIER is using the storage unit to store and prepare PCP.

20.    On November 29, 2016, surveillance video captured CHEVALIER remove a large dark plastic container from the trunk of his vehicle. CHEVALIER goes inside of the storage unit and closes the door almost completely behind him. CHEVALIER can be observed kneeling and handling objects close to the floor for approximately five minutes. This behavior is consistent with the preparation (cutting) of PCP for distribution.

21.    On December 1, 2016, surveillance video captured CHEVALIER take a plastic bag containing what appears to be a heavy object(s) from the trunk of his vehicle. CHEVALIER took the bag inside the storage unit and he can be seen using a flashlight to handle items on the floor. After approximately five minutes, CHEVALIER can be seen holding a liquid filled "Mason" style jar up to the flashlight in an apparent attempt to observe the liquid. CHEVALIER was also recorded removing a plastic bag, which appeared to contain two large jars from the storage unit, before placing the jars into the trunk of his vehicle and departing.

22.    On December 30, 2016, surveillance video captured CHEVALIER at the CubeSmart storage unit. CHEVALIER enters the unit and immediately lowers the door almost to

6

the ground. It is apparent that CHEVALIER does this to conceal his actions and the contents of the storage unit. Additionally, the storage unit is not illuminated and this activity occurred on a foggy day with low visibility. Closing the door of the storage unit in this manner on such a day is illogical, as it would make it very difficult to see once inside. CHEVALIER subsequently goes into the passenger side of the vehicle while crouching below the unit door. CHEVALIER appears to do this more than once, but the combination of the car position and partially closed unit door make it difficult to ascertain. This activity is consistent with several other visits to the storage unit, and consistent with our belief he uses the storage unit to store and process PCP.

23.     On January 3, 2017, surveillance video captured CHEVALIER at the CubeSmart storage unit. CHEVALIER enters the unit and immediately lowers the door almost to the ground. CHEVALIER remains inside the unit for several minutes before exiting the unit and re-entering his vehicle.

24.     On January 4, 2017, Agents executed a federal search warrant on CHEVALIER's storage unit, #4016, located at 8410 Westphalia Road, Upper Marlboro, MD 20774. Agents found multiple substance-filled containers inside the unit. The substance field-tested presumptive positive for PCP. The total amount of suspected PCP visually estimated to be approximately two to three gallons; however, a final accurate weight will not be determined until a lab completes an analysis. Additionally, agents located material used to process PCP, including masks, pumps, droppers, and medicinal style droppers.

## CONCLUSION

25.     Based upon the information provided in this affidavit, probable cause exists to believe that from on or about June 2015 to January 4, 2017, within the Eastern District of Virginia, Otis CHEVLIER, did knowingly, intentionally, and unlawfully combine, and conspire,

7

with UCC and others, known and unknown, to possess with intent to distribute 1 kilogram or more of a mixture and substance containing detectable amounts of phencyclidine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Jeremy Copeland
Inspector, USPS

Sworn and subscribed to before me this 5th day of January 2017, at Alexandria, Virginia.

/s/

Ivan D. Davis
United States Magistrate Judge

8